*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NEILL, Minors.

UNPUBLISHED
July 21, 2022

No. 359220
St. Joseph Circuit Court
Family Division
LC No. 2017-000020-NA

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

Respondent-father (respondent) appeals as of right the trial court's order terminating his parental rights to two minor children, KN and MN.[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent had an extensive history with Children's Protective Services and prior removals.[2] In 2017, while the mother was pregnant with KN, respondent was accused of abusing the mother's children, JN and CN. Shortly after the allegations of abuse arose, respondent was accused of physically assaulting the mother while she was pregnant with KN. JN and CN were removed from the mother's care. However, the mother instituted a safety plan and obtained a

---

[1] The parental rights of the children's mother (the mother) were also terminated. She is the appellant in Docket No. 359219. In addition to KN and MN, the mother also had two other children, JN and CN. Although respondent was not the biological father of JN and CN, he lived with the family and effectively acted as the father to the mother's older children.

[2] In August 2019, a removal of JN, CN, and KN occurred. Respondent appealed this removal decision by the trial court pertaining to KN, and the decision was affirmed by this Court. *In re K B Neill, Minor*, unpublished per curiam opinion of the Court of Appeals, issued March 12, 2020 (Docket No. 350436). We note that child protective proceedings are considered as one continuous proceeding. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

personal protection order (PPO) against respondent. The children were returned to her care. Despite the PPO, the mother and respondent married in June 2018.

In December 2020, the Department of Health and Human Services (DHHS) filed a petition seeking the removal of minor child KN from respondent's care. Respondent's wife[3] and the mother of KN, was also named as a respondent. The petition also sought the removal of JN and CN, the mother's biological children and respondent's stepchildren. The petition alleged that two separate domestic violence incidents occurred in which the mother and respondent were both pulling KN in different directions while arguing with each other. During the argument, respondent purportedly struck the mother in the face. The petition described a history of domestic violence between respondent and the mother, which included several interactions with law enforcement in 2020, as well as the two prior removals of the children over the past four years. The petition also stated that CN had sustained a fractured skull, and injuries to his shoulder and pelvis, and that an investigation was underway to determine the source of those injuries.[4] A later amendment to the petition alleged that respondent caused CN's injuries.

Following a preliminary hearing in December 2020, KN was removed from respondent's care.[5] In January 2021, the mother gave birth to MN, and the baby was also removed and placed in the same foster care home as KN. In April 2021, petitioner moved to suspend respondent's parenting time. Dr. James Henry, the director and cofounder of the Western Michigan University Children's Trauma Assessment Center, opined that continued parenting time would cause harm to the mental well-being of KN and MN. The trial court entered an ex parte order suspending respondent's parenting time.

At the adjudication and dispositional hearing requesting termination of respondent's parental rights,[6] a DHHS worker testified that JN told her that respondent had caused CN's injury. Specifically, JN said that respondent became mad at JN and CN because they would not go to bed, so respondent threw CN into a wall, causing the injury to CN's head. When JN said this, CN nodded his head in agreement.

Dr. Henry testified that he completed neuro-developmental trauma assessments for JN, CN, and KN. During the interview with CN, Dr. Henry asked how CN sustained the injuries. CN

---

[3] While the petition was pending, the mother filed for a divorce from respondent.

[4] An amended petition included further allegations of incidents in which respondent physically abused CN. The amended petition also alleged that in April 2021, respondent had contact with the mother, in violation of a court order.

[5] Respondent appealed this order, and the order was affirmed by this Court. *In re Neill*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket No. 355990).

[6] The trial court bifurcated the hearing. After hearing testimony, it found, by a preponderance of the evidence, that petitioner had established jurisdiction under both MCL 712A.2(b)(1) and (2) in light of the evidence of respondent's infliction of injury upon CN. The trial then proceeded with the dispositional hearing.

eventually said that his head hit a foot stool after respondent threw him. CN stated that this injury did not occur because he fell off a bunk bed. Dr. Henry concluded that respondent had subjected KN to a substantial risk of harm to KN's mental well-being as a result of the exposure to the violence in that household. Dr. Henry described KN's relationship with respondent as "very disorganized attachment," which included KN pushing respondent away, telling respondent to get away, and refusing to look at, or respond to, respondent.

Dr. Henry also concluded that MN was subjected to a substantial risk of harm to her mental well-being because she was in the same environment as the other children. Dr. Henry described an incident during a parental visit in which MN was screaming and respondent was unable to calm her, which Dr. Henry interpreted to mean that MN feared respondent.

Dr. Henry believed that it was in KN's and MN's best interests that respondent's parental rights be terminated. This conclusion was premised on the substantial risk of physical harm, continued exposure to violence in the home, the impact that continuous fear had on the children's brains, respondent's inability to attune to the needs of the children, and respondent's continued denial of the cause of the injuries to CN.[7]

At this hearing, the mother admitted that respondent had committed acts of violence against both her and the children. The mother described her relationship with respondent as very abusive, causing her to obtain two separate PPOs against respondent in 2017 and 2020. She acknowledged that the violence in the home caused emotional and mental harm to the children because they watched their mother being abused. The mother confirmed the petition's allegation that she and respondent had engaged in a physical altercation that involved pulling on KN.

A DHHS worker recommended the termination of respondent's parental rights.[8] She opined that it was difficult to discern what services could be provided because DHHS had attempted to remedy respondent's violent behaviors on two prior occasions without success. Although respondent represented that he was addressing his behavior with his own mental health professionals, he did not sign a release to grant DHHS access to the records. Respondent did provide a certificate of completion for a domestic violence class and a parenting class to DHHS. However, there was no indication that respondent had benefited from his services because respondent and the mother had continued contacts three days before the hearing that required police response. The worker opined that respondent's issues could be not resolved in a reasonable time, and any resolution would take at minimum of one year of services. Given the children's ages, it was concluded that a year was an unreasonable time period because the children needed permanency and had already been placed outside of the home for almost 10 months. KN and MN were in a preadoptive placement at that time.

Respondent testified that he was participating in and benefiting from services. He had completed 16 weeks of a 52-week batterer's intervention program, as well as online domestic

---

[7] Also at this hearing, pediatrician Dr. Sarah Brown testified regarding her examination of CN and the likelihood that CN's injury was inflicted rather than the result of a fall from a bunk bed.

[8] The guardian ad litem also supported the termination of respondent's parental rights.

violence and anger management classes. Respondent represented that he had undergone a psychological evaluation and saw a therapist weekly. Additionally, respondent had a psychiatrist to manage his medications related to post-traumatic stress disorder. Respondent opined that he had done everything required of him to maintain his parental rights.

Respondent testified that he had a strong bond with KN, who was "a daddy's boy." Respondent told the trial court that his bond with MN was not as strong because MN was so young and his parenting time was suspended when MN was three months old.[9] Respondent did not think that JN, CN, or KN were fearful of him. He recognized that he had a problem with domestic violence, but was making progress to fix this issue. Respondent further admitted that the problem was not yet resolved.

The trial court found by clear and convincing evidence that termination was warranted under MCL 712A.19b(3)(b)(*i*) and MCL 712A.19b(3)(j). The trial court also found by a preponderance of the evidence that it was in the best interests of KN and MN to terminate respondent's parental rights. The trial court based this decision on the fact that respondent had no bond with MN and a dysfunctional bond with KN. The trial court also stated that because of the ages of the children—KN was three years old and MN was less than one year old—the children needed stability, permanency, security, and safety that respondent could not provide. The trial court credited the opinions of the DHHS worker and expert that termination was in the best interests of the children.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court erred when it found by clear and convincing evidence that there were statutory grounds for termination of respondent's parental rights. We disagree.

To terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination expressed in MCL 712A.19b(3) has been established. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (citation omitted). A challenge to the trial court's finding that a statutory ground for termination was established is reviewed for clear error. *Id*. A finding is clearly erroneous when there is some evidence to support it, but a review of the entire record, leaves the reviewing court with the definite and firm conviction that the trial court made a mistake. *Id*. Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Regard is given to the trial court's special opportunity to determine the credibility of the witnesses who appeared before it. *Id*. at 33. We conclude that there was clear and convincing evidence to support MCL 712A.19b(3)(b)(*i*), and the trial court did not clearly err in its determination. *In re Mota*, 334 Mich App at 320.

---

[9] According to the trauma assessment center, respondent attended a parenting time visit with KN and MN. It was recorded that KN pushed respondent away. Additionally when MN became upset and cried, KN tried to push respondent away from MN and calm her by himself.

The statutory ground for termination of MCL 712A.19b(3) relied on by the trial court provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

How a parent treats one child is probative of how the parent will treat the child's other siblings. *In re HRC*, 286 Mich App 444, 460-461; 781 NW2d 105 (2009).

In the instant case, the trial court found that respondent caused CN's injuries—a skull fracture, a potentially broken hip, and other injuries. The trial court also highlighted Dr. Henry's testimony that the children were at risk of brain damage if they remained in respondent's care. The trial court noted that, although respondent said that he was participating in classes, there were ongoing complaints to the police about respondent's behavior toward the mother. On the basis of these findings, the trial court determined that MCL 712A.19b(3)(b)(*i*) had been established by clear and convincing evidence.

Respondent contends that the trial court erred by crediting the testimony of Dr. Brown regarding the cause of CN's injury. Irrespective of Dr. Brown's testimony, JN and CN were initially reluctant to discuss their home life. Eventually, these children disclosed that CN was not injured by a fall from a bunk bed, but rather CN was injured when respondent threw him into a wall and he fell on a footstool. CN was fearful of respondent.[10] The trial court had an independent basis to conclude that respondent caused CN's skull fracture, and his challenge is without merit.

Respondent also submits that the trial court clearly erred when it found that there was a reasonable likelihood that KN and MN would suffer from injury or abuse in the foreseeable future if placed in respondent's care. Specifically, respondent contends that "there was no testimony that any of the other children had sustained any injuries despite the years of court and DHHS involvement." MCL 712A.19b(3)(b)(*i*) does not require that KN or MN suffer their own independent physical injury when a sibling has suffered physical injury or abuse. Nonetheless, this petition was filed after it was learned that respondent and the mother were essentially engaged in a "tug of war" with KN, and respondent struck the mother in the face. A similar incident occurred a couple of weeks earlier with KN. Although direct physical injury may not have

---

[10] This information was also contained in the trauma assessment reports. The admission of the children's statements were the subject of a motion granted by the trial court. Respondent does not challenge the trial court's decision on appeal.

occurred to KN, it appeared that being present to the abuse of others had adverse impacts on KN. During parenting time visits, KN did not look to respondent for calm and comfort, but pushed him away. When MN cried and could not be soothed by respondent, three-year-old KN attempted to push respondent away from her and calm the infant himself. Additionally, how a parent treats one child is probative of how the parent will treat that child's siblings. See *In re HRC*, 286 Mich App at 460-461. Therefore, how respondent treated CN is probative of how respondent would treat KN and MN. See *id*. It was not clearly erroneous for the trial court to find that termination was warranted under MCL 712A.19b(3)(b)(*i*) even though there was no evidence that respondent caused a physical injury to KN or MN. Accordingly, the trial court did not clearly err in determining that this statutory ground for termination was satisfied.[11]

### III. BEST INTERESTS OF THE CHILDREN

Lastly, respondent alleges that the trial court erred when it found by a preponderance of the evidence that it was in the best interests of the children to terminate respondent's parental rights. We disagree.

Once a statutory ground for termination has been established, the trial court must conclude that termination of parental rights is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A trial court's decision regarding a child's best interests is also reviewed for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). When making the best-interests determination, the trial court may consider the entire record. *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A

---

[11] Respondent submits that the trial court failed to consider the services that he completed. On the contrary, as noted, any benefit received was questionable in light of respondent's continued contact with the mother and the continued involvement of law enforcement. In light of our conclusion that MCL 712A.19b(3)(b)(*i*) was satisfied, we need not address the trial court's finding that MCL 712A.19b(3)(j) was also met. However, we agree with the trial court that the evidence also fulfilled this statutory subsection. Respondent admitted that he committed acts of domestic violence and had not fully addressed this issue. Additionally, KN was subjected to "tug of war" by respondent and the mother during their domestic disputes.

child's placement with relatives is also a factor to consider and generally weighs against termination. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

The trial court found that respondent had no bond with MN. The trial court also noted the testimony of Dr. Henry that respondent's bond with KN was "dysfunctional." The trial court considered the children's need for stability and permanency. The trial court noted the ages of the children (at that time the children were three years old and less than one year old), and found that respondent could not provide stability, permanency, security, or safety. The trial court emphasized the testimony of the DHHS worker and the expert in concluding that termination was in the children's best interest. The trial court also considered the likelihood of adoption of these children. The trial court determined by a preponderance of the evidence that it was in the best interests of KN and MN to terminate respondent's parental rights.

Respondent submits that the trial court clearly erred when it failed to explicitly delineate all of the best-interest factors discussed in *Olive/Metts*, 297 Mich App at 41-42. He further contends that any lack of a bond with his children was caused by the trial court's suspension of his parenting time visits, that the trial court failed to consider his parenting ability and the improvements to parenting through the parenting class and anger management course, that he could provide permanency and stability because he had stable housing and employment and participated in mental health services, and that there was no evidence to support the likelihood of adoption, only speculation.

We reject respondent's challenges to the trial court's conclusion that termination of his parental rights was in the children's best interests. This Court has expressed a variety of factors that the trial court *may* consider, *White*, 303 Mich App at 714; *Olive/Metts*, 297 Mich App at 41-42, and the use of the term may is permissive, not mandatory, see *In re Hansen*, 285 Mich App 158, 164; 774 NW2d 698 (2009), vacated in part on other grounds 486 Mich 1037 (2010). Although the trial court may have ended the parenting time visits, it was precipitated by concerns from the trauma assessment center that KN demonstrated "disorganized attachment" from respondent and was "emotionally triggered into traumatic responses by contact" with respondent. It was noted that KN pushed respondent away from him and MN at least 15 times in one hour. Although respondent may have addressed parenting and other issues in classes and in counseling, it was not evident that he had benefited in light of his repeated contacts with the mother that triggered police intervention. Respondent acknowledged that he had not completely addressed his issues. Additionally, respondent's ability to provide a home and transportation for the children did not demonstrate that he could provide them with stability and safety such that they would look to him for support. Finally, the trial court was not required to secure an adoption placement for the children prior to reaching the best-interests determination. Under the circumstances, the trial court did not clearly err when it found that termination of respondent's parental rights was in KN and MN's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel